### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | |
|---|---|
| NANETTE SMALCER, | ) CASE NO. 1:21-CV-01033-CAB |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| Defendant, | ) **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Nanette Smalcer ("Smalcer" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for a period of disability and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On August 28, 2017, Claimant filed an application for a period of disability and DIB, alleging a disability onset date of August 23, 2017. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On January 11, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. On March 20, 2019, the ALJ issued a written decision finding Claimant was not disabled. The Appeals Council denied Claimant's appeal. Claimant

1

appealed to the United States District Court. Following the Claimant's brief, which raised three issues - two of which are similar to two of the issues herein[1], the parties stipulated that a remand was appropriate, and the district court remanded the matter for another hearing. On February 26, 2021, a new hearing was held before the same ALJ with testimony again taken from Claimant and a Vocational Expert. (ECF No. 10, PageID #: 1102-1127). On March 12, 2021, the ALJ issued a written decision again finding that Claimant was not disabled. (ECF No. 10, PageID #: 1054-1076). The ALJ's decision became final on April 26, 2021, when the Appeals Council declined further review. (ECF No. 10, PageID #: 1042-147).

On May 18, 2021, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14 and 16). Claimant asserts the following assignments of error:

(1) The ALJ erred in finding that Claimant did not meet or equal Listing 14.02.

(2) The ALJ erred in rendering an RFC that did not include limitations for Claimant's lupus and kidney disease.

(3) The ALJ erred in not including a limitation regarding the use of a cane in Claimant's RFC. (ECF No. 14 at 1).

**III. Background**

    **A. Claimant's Symptom Testimony**

The ALJ summarized Claimant's symptom testimony:

---

[1] The issues raised in Claimant's previous appeal were: 1) "Whether the ALJ erred in finding [Claimant] did not meet or equal Listing 14.02"; 2) "Whether the ALJ erred in rendering a residual functional capacity that excluded limitations involving [Claimant's] lupus and kidney disease"; and 3) "Whether remand is warranted for the consideration of new and material evidence." *See Smalcer v. Commissioner of Social Security*, N.D. Ohio Case No. 1:20-cv-00313-JG, ECF No. 13 at 1.

> The claimant testified at the hearing on February 26, 2021. She testified she uses a cane in her left hand. She does not use it all the time, but uses it a couple of times a week. She uses it when her legs hurt. She also said she uses a cane for standing and balance. Claimant testified she lost 40 pounds since the previous hearing. She currently weighs 203 pounds. Claimant said she naps every day for 4-5 hours. She also said she is depressed and anxious. Claimant testified she stopped smoking one week prior to the hearing. She needs to be smoke free 6-8 weeks to be eligible for a kidney transplant.
>
> Claimant testified in a typical day she wakes up and gets dressed. She has breakfast and watches television. She is exhausted and takes a nap. She again watches television. She may do a puzzle. She lives with her 76-year-old mother, who does all the household chores.

(ECF No. 10, PageID #: 1063).

**B. Medical Evidence[2]**

The ALJ also summarized Claimant's health records and symptoms:

> Claimant was diagnosed with systemic lupus erythematosus in the remote past (Exhibit 2F/13). Her records also reflect lupus nephritis[3] (Exhibit 1F/4). She was noted as having stage III kidney disease (Exhibit 2F/12). Claimant was admitted in August 2017 with fatigue and nausea and her creatinine numbers were elevated, and Dr. Nurko thought it may be progression of her kidney disease (Exhibit 2F/10; 2F/24; 2F/29). She was evaluated for dialysis in September 2017 (Exhibit 10F/1). As noted previously, the claimant was only dialysis for a short period of time in 2020, but it was stopped due to improvement in renal function (Exhibit 32F/21, 25; 33F/10). Claimant underwent an evaluation in August 2020 at the Glickman Urologic and Kidney Institute at the Cleveland Clinic to determine if she was a suitable candidate for a kidney transplant. Claimant was well appearing, alert and in no acute distress (Exhibit 33F/16-23). She was not a

---

[2] Additional evidence is included within the analysis of the Report & Recommendation as needed.

[3] According to The Lupus Foundation of America, "[l]upus nephritis is one of the most serious complications of systemic lupus erythematosus (SLE). It occurs when the immune system mistakenly attacks the kidneys, leading to inflammation and possibly to organ damage." https://www.lupus.org/resources/what-is-lupus-nephritis, (last visited 5/20/2022).

> candidate for kidney transplant due to obstructive ventilator defect due to tobacco abuse combined with ongoing tobacco abuse. She would be re-evaluated if she could stop smoking and demonstrate improvement in pulmonary function testing (Exhibit 33F/30).
>
> Claimant also sees a podiatrist, Jeffrey Halpert, D.P.M. She had custom orthotics made due to osteoarthritis and pain in her feet (Exhibit 2F/55). She appears to have picked them up in July 2017 (Exhibit 7F/3). Claimant was noted as having a steady gait with no assistive devices (Exhibit 2F/9; 9F/3; 9F/13). Claimant saw Dr. Halpert on August 10, 2020. She had fallen and injured her left foot. X-rays showed closed nondisplaced fracture of the third and four metatarsal bones of the left foot. Claimant was given an aircast pneumatic boot (Exhibit 30F/6-9). Claimant reported improvement on September 17, 2020 (Exhibit 30F/16). [ ]
>
> [ ]
>
> Claimant was diagnosed with coronary artery disease and COPD (Exhibit 2F/14). She underwent an echocardiogram in August 2017 that showed her left ventricle was normal in size, there was no left ventricular hypertrophy, normal left ventricular diastolic function, and her ejection fraction was 62% (Exhibit 3F/16). Her right ventricle was also normal with normal systolic function (Exhibit 3F/17). Claimant did have a COPD exacerbation in August 2018 and she was admitted with a cough and intermittent shortness of breath (Exhibit 9F/9-10). She was noted as using symbicort, a Ventolin inhaler that did not work, and having a nebulizer, which she did not use (Exhibit 9F/10). She was noted as having a history of bronchitis as well (Exhibit 9F/2). [ ]
>
> Claimant was noted as being 165.10 cm tall and 105.69 kg, for a BMI of 38.8 (Exhibit 3F/15). Claimant weighed 194 pounds and had a BMI of 32.28 on August 18, 2020 (Exhibit 33F/16). [ ]

(ECF No 10, PageID #: 1064).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: systemic lupus erythematosus, chronic kidney disease, congestive heart failure, obesity, major depressive disorder, dysfunction of major joints, and chronic obstructive pulmonary disease (20 CFR 404.1520(c)).

4

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except claimant can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; frequently tolerate dusts, odors, fumes, and pulmonary irritants; can understand, remember, carryout and complete tasks with no strict production rate pace requirements; and can adapt to occasional workplace changes.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2017, through the date of this decision (20 CFR 404.1520(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

5

538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises several issues on appeal. First, Claimant asserts that the ALJ erred in finding that she did not meet or equal Listing 14.02. Second, Claimant asserts that the ALJ erred by failing to include limitations in the RFC involving Claimant's lupus and kidney disease.

6

Third, Claimant asserts that the ALJ erred by failing to include a limitation for Claimant's use of a cane. For the reasons set forth below, this Court finds that the ALJ failed to build a logical bridge between the evidence of the record and his conclusion that Claimant did not meet or equal Listing 14.02. Because remand is required based on the ALJ's error, the Court will not analyze Claimant's remaining issues.

In Claimant's first issue for review, she argues that remand is required because the ALJ failed to find that she had two constitutional symptoms under Listing 14.02. (ECF No. 14 at 15). Specifically, Claimant argues that the evidence demonstrates that she suffered from severe fatigue, malaise, and chronic pain (ECF No. 14 at 15-16 (citing Tr. 581, 771, 789, 873, 889, 1346, 1570, 1572, 1585, 1725, 1727, 1777, 1802, 1848, 1886, 1899, 2701, 3056, 3312, 3399, 3406, 3539)). Additionally, Claimant argues that substantial evidence established marked limitation in her activities of daily living, one of the requirements of Listing 14.02(B). (ECF No. 14 at 16). Finally, Claimant argues that the ALJ erred "by failing to call upon a medical expert to address the nuances of the listing and complexity of the impairment." (ECF No. 14 at 17). Claimant states that "[h]aving a medical expert present would have assisted the ALJ in finding malaise present in the record." (ECF No. 14 at 17). The Commissioner argues that: 1) "ALJ reasonably found the record failed to support a second constitutional symptom or sign of her SLE beyond fatigue" (ECF No. 16 at 8); 2) the ALJ also reasonably concluded Claimant did not have marked limitations in activities of daily living or social functioning (ECF No. 16 at 9-10); and 3) Claimant has not demonstrated the ALJ abused his discretion in failing to call a medical examiner (ECF No. 16 at 10). For the reasons set forth below, the Court agrees with the Claimant that the reasons given by the ALJ in finding that Claimant did not demonstrate two constitutional symptoms set forth in Listing 14.02 are not consistent with the record. Because this finding

7

requires remand, this Court will not analyze the remaining subparts of Claimant's first issue.

At step three of the sequential evaluation, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing. 20 C.F.R. § 404.1520(d). A claimant who meets the requirements of a listing will be considered disabled and entitled to benefits. 20 C.F.R. § 404.1520(d); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). The Sixth Circuit has held that "[a]n [ALJ] must compare the medical evidence with the rsequirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds*, 424 F. App'x at 415 (citing *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir.2006)). The ALJ must discuss his or her Step Three findings in a manner that will permit meaningful judicial review. *Reynolds*, 424 F. App'x at 414; *Hunter v. Astrue*, No. 1:09CV2790, 2011 WL 6440762 (N.D. Ohio Dec.20, 2011).

Listing 14.02 sets forth the criteria for determining whether Claimant's systemic lupus erythematosus ("SLE") is severe enough to prevent her from doing any gainful activity, regardless of her age, education, or work experience. 20 C.F.R. § 404.1525(a) and (b). Listing 14.00(D)(1)(a) explains that SLE:

> is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(D)(1)(a). To satisfy the listings requirement for SLE, a claimant must demonstrate through medical evidence:

> A. Involvement of two or more organs/body systems, with:
>
> > 1. One of the organs/body systems involved to at least a moderate level of severity; and
> >
> > 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> OR
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> > 1. Limitation of activities of daily living.
> > 2. Limitation in maintaining social functioning.
> > 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.02.

Claimant argues that the ALJ erred by determining that she did not have at least two of the constitutional symptoms or signs of SLE - severe fatigue, fever, malaise, or involuntary weight loss, thereby meeting the requirements of Listing 14.02(A)(2).[4] In support of her argument for error, Claimant points to medical records noting her complaints of severe fatigue and malaise.

"[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the

---

[4] Claimant asserts she clearly met the requirement of Listing 14.02(A)(1) "as her lupus has caused renal involvement of, at least, moderate severity requiring hemidialysis[.]" (ECF No. 14 at 15 (citing Tr. 583, 619, 752, 893, 920, 3318, 3325, 3501, 3582)). The Commissioner does not dispute this.

9

ALJ[,]" this Court must affirm the decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). If the ALJ, however, failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This logical-bridge requirement ensures that a claimant will understand the ALJ's reasoning. Here, the ALJ failed to build a logical bridge between the evidence and his finding that Claimant did not satisfy at least two of the constitutional symptoms or signs of SLE.

A claimant bears the burden of producing evidence showing that she meets all of a Listing's requirements. *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013). Claimant argues that she demonstrated that she suffers from both severe fatigue and malaise. (ECF No. 14 at 15 (citing Tr. 581, 771, 789, 873, 889, 1346, 1570, 1572, 1585, 1725, 1727, 1777, 1802, 1848, 1886, 1899, 2701, 3056, 3312, 3399, 3406, 3539)).[5] "Severe fatigue" is defined as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(C)(2). "Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(C)(2).

---

[5] The Commissioner asserts that many of Claimant's record citations "simply do not support her contention [that she suffered malaise]." (ECF No. 16 at 8 (citing to Claimant's citation to the transcript at 889, 1585, 2701, 3312, 3399, and 3539)). The Court notes that these contested record citations arguably pertain to Claimant's feelings of illness, bodily discomfort, lack of well-being, and/or fatigue. (*See* ECF No. 10, PageID #: 930 (fatigue), 1626 (Cymbalta prescription), 2742 (depression/Cymbalta May 12, 2020), 3359 (relates to Tr. 3318 not 3312) (fatigue, lethargy), 3440 (uses cane to ambulate due to arthritis), and 3580 (under stress and a lot of pain from medical issues)).

The ALJ explained that "Claimant did report fatigue around the time of the alleged onset date in August and September 2017 as well as in March 2018 and June 2018 (Exhibit 5F/16; 8F/1; 8F/18). However, claimant did not report fevers, malaise or involuntary weight loss." (ECF No. 10, PageID #: 1061). Additionally, the ALJ stated that Claimant's "[m]ore recent records also lack reports of fatigue" and that "Claimant reported she was feeling well with no fatigue in May 2020 (Exhibit 23F/31); June 2020 (Exhibit 27F/41); September 2020 (Exhibit 33F/41); and December 4, 2020 (Exhibit 36F/24; duplicate at 37F/15)". (ECF No. 10, PageID #: 1061). After reviewing the ALJ's decision and the record, this Court finds that the ALJ failed to build a logical bridge between the evidence in the record and his conclusion.

With respect to Claimant's symptom of severe fatigue, the ALJ acknowledged that Claimant reported severe fatigue in 2017 and 2018 but then cited to various records from 2020 to support his finding that Claimant's more recent records lack reports of fatigue. (ECF No. 10, PageID #: 1061 (citing ECF No. 10, PageID #: 3176, 3391, 3658, and 3717)). The Court notes that the records relied upon by the ALJ do not appear to be from visits related to the treatment of Claimant's SLE. Specifically, the ALJ's first citation is from a May 12, 2020 virtual visit with Dr. Roopa Sankar following Claimant's HPV condyloma surgery. (ECF No. 10, PageID #: 3176). The June 10, 2020 reference is from a "tuberculosis risk assessment questionnaire" on which Claimant circled "no" as to whether she was experiencing "[c]hronic fatigue with any of the above symptoms", which symptoms included persistent cough lasting two weeks or more, smoking, change in cough or coughing up blood, fever or night sweats for more than one week, loss of appetite, unexplained weight loss, and recent cold of upper respiratory infection lasting more than seven to ten days. (ECF No. 10, PageID #: 3391). The September 2, 2020 reference is from a follow-up virtual visit with Dr. Sankar regarding the treatment of Claimant's right eye

11

conjunctivitis. (ECF No. 10, PageID #: 3657). Finally, the December 4, 2020 reference is from another virtual visit with Dr. Sankar for a follow-up regarding Claimant's hypertension and referral for a mammogram. (ECF No. 10, PageID #: 3719).

Moreover, despite the ALJ's statement that the "more recent records [ ] lack reports of fatigue[,]" with the exception of the four references discussed above, Claimant consistently complained of fatigue in 2019 and 2020. (*See* ECF No. 10, PageID #: 1768 (referencing reports of fatigue at earlier visits with Dr. Elisabeth Ray[6], her rheumatologist, on February 22, 2019; June 14, 2019; and September 20, 2019); 1768 (January 24, 2020); 1766 (January 27, 2020); 3359 (June 9, 2020, "no improvement of fatigue with dialysis"); and 3446, 3447 (July 24, 2020)). Each of these references regarding Claimant's fatigue involved communications made to physicians specifically treating her for conditions related to her SLE. These medical notes and records were inconsistent with the ALJ's statement that the recent records lack reports of fatigue, yet the ALJ did not mention them.

With respect to Claimant's symptom of malaise, the ALJ simply stated that "claimant did not report fevers, malaise or involuntary weight loss." (ECF No. 10, PageID #: 1061). This statement also conflicts with the evidence in the record. On August 22, 2017, Claimant was directly admitted to the Cleveland Clinic from Dr. Saul Nurko's office with complaints of increased nausea and fatigue symptoms (and increased levels of creatinine and BUN). (ECF No. 10, PageID #: 636, 834). Dr. Nurko felt that Claimant's symptoms may be due to the progression

---

[6] Claimant's previous rheumatologist, Dr. Epstein, retired in June 2018. (ECF No. 10, PageID #: 1927). Claimant began treating with Dr. Ray in November 2018. (ECF No. 10, PageID #: 1927). It appears that the ALJ was not familiar with the Claimant's transition from Dr. Epstein to Dr. Ray as he expressed confusion as to Dr. Ray's role in Claimant's treatment. (*See* ECF No. 10, PageID #: 1066). However, the records state that Dr. Ray became Claimant's treating rheumatologist following Dr. Epstein's retirement.

of her chronic kidney disease and referred Claimant for a nephrology consult and further workup. Following the consult, Claimant remained in the hospital for observation. Dr. Epstein examined her in the hospital on August 24, 2017. Claimant remained in the hospital until August 25, 2017. (ECF No. 10, PageID #: 636). Throughout this time, Claimant complained of fatigue, nausea, and/or burning sensation when urinating. (ECF No. 10, PageID #: 621-636).

On August 30, 2017, Claimant informed Dr. Epstein that she was relieved of her work duties due to missing work because of increased fatigue and overall not feeling well. (ECF No. 10, PageID #: 833).

During Claimant's March 5, 2018 office visit with Dr. Epstein, her symptom review indicates that she was negative for fever but positive for fatigue and pain. (ECF No. 10, PageID #: 913). Pain and redness were noted in Claimant's eyes and swelling in her feet/legs was indicated. (ECF No. 10, PageID #: 913). Claimant indicated nausea, joint pain, joint swelling, morning stiffness in joints, muscle weakness, skin rashes, color changes in hands or feet in the cold, hair loss, nail changes, headaches, and increased susceptibility to infection. (ECF No. 10, PageID #: 914, 928-929).

During a June 18, 2018 office visit with Dr. Epstein, the records note that Claimant was "stable" but still struggling with fatigue and hip pain. (ECF No. 10, PageID #: 930). Claimant indicated symptoms of severe fatigue, pain and redness in her eyes, severe sores in her mouth, dry mouth, swelling in her feet or legs, joint pain, severe joint swelling, severe morning stiffness in joints, hair loss, and moderate rash on her cheeks. (ECF No. 10, PageID #: 941-947).

Claimant's complaints about feeling generally unwell and suffering from continued pain continued in 2019 and 2020. (*See e.g.* ECF No. 10, PageID #: 1768 (February 22, 2019, "hurts allover"'; June 14, 2019; January 24, 2020 (eye pain, swelling in feet or legs, joint pain, joint

swelling, morning stiffness in joints, muscle weakness, rashes, hair loss, numbness or tinging, in pain, sores in mouth)); 1766 (January 27, 2020 (in significant pain)); and 3446-3449 (July 24, 2020 (pain in knees and ankles/feet; cannot sleep due to frequent urination and pain; symptoms review includes fatigue, pain, swelling in feet or legs, sores in mouth, joint pain, joint swelling , muscle weakness; Claimant reported little interest in doing things every day, little energy, extreme difficulty with working, taking care of things at home, or getting along with other people due to symptoms)).

"A reviewing court must affirm an ALJ's factual findings when they are supported by 'substantial evidence.'" *Propst v. Comm'r of Soc. Sec.*, No. 5:20-CV-01755, 2022 WL 657481, at *2 (N.D. Ohio Mar. 3, 2022) (quoting 42 U.S.C. § 405(g)). " 'Substantial evidence' is evidence 'as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted)). "But a court cannot uphold a decision, even if it is supported by substantial evidence, if 'the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Id.* (quoting *Fleischer*, 774 F. Supp. 2d at 877). "The ALJ may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Id*. (citations and internal quotation marks omitted). "If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked." *Id.* (citations omitted).

Here, the ALJ concluded that there were "no reports of [] malaise" and that Claimant's more recent records did not include reports of fatigue. These statements are not consistent with the record. There are many health appointments from 2017 through 2020 during which it was noted that Claimant reported fatigue and general feelings of pain and being unwell. Having failed to mention the contrary evidence, the Court cannot determine whether the ALJ discounted this

evidence or simply overlooked it completely when finding that Claimant did not meet Listing 14.02. *Propst*, 2022 WL 657481, at *2 (citing *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012)). "The presence of contrary evidence that the ALJ omitted means that the ALJ did not build an accurate, logical bridge between the evidence and the [ALJ's decision]." *Id.* (citing *Fleischer*, 774 F. Supp. 2d at 877). This evidence could have affected the ALJ's assessment as to whether Claimant suffered from at least two of the constitutional symptoms or signs necessary under Listing 14.02(A). Having misconstrued the treatment notes, the ALJ failed to build a logical bridge between the evidence and his determination, and remand is required. *Id.*

Given that remand is appropriate on this issue, in the interest of judicial economy, the Court need not reach whether the ALJ also erred by failing to include limitations in the RFC involving Claimant's lupus and kidney disease or whether the ALJ erred by failing to include a limitation for Claimant's use of a cane. On remand, the ALJ is of course free to further address Claimant's additional issues.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: May 24, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).